# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued January 12, 2023        Decided May 2, 2023

No. 21-7097

KEREN KAYEMETH LEISRAEL - JEWISH NATIONAL FUND, ET AL.,
APPELLANTS

v.

EDUCATION FOR A JUST PEACE IN THE MIDDLE EAST, DOING BUSINESS AS US CAMPAIGN FOR PALESTINIAN RIGHTS,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:19-cv-03425)

———

*Nathan Lewin* argued the cause for appellants. With him on the briefs were *Tracy Reichman Kalik* and *Alyza D. Lewin*.

*Diala Shamas* argued the cause for appellee. With her on the brief were *Maria C. LaHood*, *Shayana D. Kadidal*, *Judith Brown Chomsky*, and *David P. Helwig*.

Before: PILLARD and PAN, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* PAN.

2

PAN, *Circuit Judge*: Appellants are victims of terrorist attacks allegedly perpetrated by the Islamic Resistance Movement, colloquially known as "Hamas." Appellants assert that Hamas and affiliated groups are responsible for launching incendiary devices from the Gaza Strip into areas of Israel where appellants live and own property, causing substantial damage and emotional harm. They sued an American non-profit corporation — Education for a Just Peace in the Middle East, doing business as the U.S. Campaign for Palestinian Rights ("USCPR") — under the Anti-Terrorism Act ("ATA"), alleging that USCPR aided and abetted and provided material support to Hamas. The district court dismissed the Complaint, holding that appellants failed to allege sufficient links between Hamas and USCPR to hold USCPR liable for any acts of terrorism. We agree and affirm.

## BACKGROUND

Appellants are three American families that live in the Gaza Envelope — the Israeli land surrounding the Gaza Strip. They have homes in Sderot and Netivot, two communities in the Gaza Envelope. The Complaint alleges that these families have suffered from a "constant threat of attacks" from incendiary balloons and kites launched from the Gaza Strip. Compl. ¶ 171. The incendiary devices have burned forests, destroyed scenic trails, ruined crops, caused blackouts, and led Israeli inhabitants of the Gaza Envelope to live in a state of terror. The appellant families allege that they have endured property damage, emotional distress, and other harm from the incendiary devices. They assert that Hamas perpetrated the attacks; and they brought ATA claims against USCPR for allegedly supporting Hamas.

The Complaint also alleges common-law conspiracy claims for trespass, destruction of property, public nuisance,

and tortious interference on behalf of Keren Kayemeth LeIsrael-Jewish National Fund ("KKL-JNF"), an Israeli company dedicated to purchasing land in Israel for settlement and afforestation. KKL-JNF claims "tens of millions of dollars in damage" to its property in the Gaza Envelope, all caused by incendiary devices allegedly launched by Hamas. Compl. ¶¶ 109, 157–60, 237–71. KKL-JNF did not — and as an Israeli company, could not — bring ATA claims. *See* Compl. ¶¶ 7, 198, 212, 226; 18 U.S.C. § 2333(a) (allowing suit by "[a]ny national of the United States"). Although KKL-JNF is listed as the lead appellant in this case, the briefs discuss only the ATA claims.

Appellee USCPR is a U.S.-based non-profit corporation. USCPR allegedly provides material support and fiscal sponsorship to the Boycott National Committee, which was formed in 2005 to coordinate the efforts of various Palestinian political parties, unions, associations, and other organizations to "boycott[] Israel . . . economically, academically[,] and diplomatically." Compl. ¶¶ 70, 73, 76. The Boycott National Committee calls itself the "broadest coalition in Palestinian civil society that leads the global [boycott, divestment, and sanctions] movement for Palestinian rights"; it brings together "Palestinian civil society activists and pro-Palestinian activists abroad" to promote "boycott as a central form of civil resistance." Compl. ¶¶ 74, 76, 124. One Boycott National Committee member has stated that USCPR is the Boycott National Committee's "most important strategic ally and partner in the U.S." Compl. ¶ 130.

Appellants allege that Hamas is responsible for the incendiary attacks in the Gaza Envelope, and that Hamas is part of a vast conspiracy against Israel that also includes the Boycott National Committee. Since 1997, Hamas has been designated a "foreign terrorist organization." Compl. ¶ 62; Designation of

Foreign Terrorist Organizations, 62 Fed. Reg. 52,650 (Oct. 8, 1997). Hamas took control of the Gaza Strip in 2007, where it maintains authority to this day. Compl. ¶¶ 42–43. The Complaint alleges that the Sons of al-Zawari,[1] "Palestinian youths," or "H[amas] and/or others" have attacked the Gaza Envelope by launching incendiary devices from the Gaza Strip. Compl. ¶¶ 9–21, 52, 54, 100, 108, 157–58. The incendiary devices include kites and balloons equipped with flammable materials and means of igniting. *Id.* Hamas allegedly directs funds collected for ostensibly charitable or humanitarian purposes into financing these launches. Compl. ¶ 57. Appellants contend that Hamas also sponsors and supports protests known as the "Great Return March," during which incendiary kites and balloons are flown into Israeli communities in the Gaza Envelope. Compl. ¶ 87. Because "[t]here is little to nothing that happens in Gaza that H[amas] does not know about, approve[,] and support," appellants blame Hamas for the incendiary attacks. Compl. ¶¶ 48, 107.

Appellants contend that Hamas is connected to the Boycott National Committee and the Palestinian National and Islamic Forces ("PNIF"), describing the latter as a "coordinating framework" for various Palestinian groups, "including five designated terrorist organizations." Compl. ¶ 66. In appellants' telling, the PNIF seeks "to lead and coordinate terrorist activities." *Id.* According to the Complaint, Hamas

---

[1] The Sons of al-Zawari "frequently take credit" for launching incendiary devices, post pictures and videos online of their exploits, and depict Palestinian flags alongside incendiary devices. Compl. ¶ 102. Appellants assert that the Sons of al-Zawari "are part of H[amas]," and that Hamas and the PNIF have supported the Sons of al-Zawari by hosting funeral ceremonies for its members and by posting photos and videos of the group's incendiary launches on Facebook. Compl. ¶¶ 101, 103–05.

claims membership in both the PNIF and the Boycott National Committee. Compl. ¶¶ 24, 66. Moreover, a PNIF representative sits on the Boycott National Committee, and the two groups share personnel. Compl. ¶ 80.

The Complaint alleges that the PNIF and the Boycott National Committee "are intertwined and unified in their commitment to terrorize and demonize Israel." Compl. ¶ 80. Appellants assert that the PNIF was the first coalition involved with the Boycott National Committee, first "propelled the boycott strategy," and has lent the Boycott National Committee power based on the PNIF's "representation of all the political[,] national[,] and Islamic factions." Compl. ¶ 78. Appellants contend that the "real purpose" of the Boycott National Committee and the boycott movement writ large "is the elimination of Israel as a sovereign nation-state." Compl. ¶ 76.

Appellants seek to hold USCPR directly and indirectly liable under the ATA for the emotional and other harms inflicted by the incendiary attacks that appellants attribute to Hamas. Because Hamas is a member of both the Boycott National Committee and the PNIF, *see* Compl. ¶¶ 24, 66, 202, and USCPR allegedly aided Hamas "through the [Boycott National Committee] and otherwise," *see* Compl. ¶¶ 218, 233, appellants claim that USCPR should be held accountable for its contributions to the activities of the alleged terror network. At oral argument, appellants clarified their theory of liability, stating that they view the Boycott National Committee as "a direct front for Hamas." *See* Oral Arg. Tr. 5:16–17. Appellants contend that "[b]y giving [money] to the [Boycott National Committee], [USCPR is] giving money to Hamas." *Id.* at 5:11–17.

The district court granted USCPR's motion to dismiss the ATA counts for failure to state a claim. *See Keren Kayemeth*

*LeIsrael–Jewish Nat'l Fund v. Educ. for a Just Peace*, 530 F. Supp. 3d 8, 15 (D.D.C. 2021). It dismissed appellants' claims alleging direct liability under the ATA for lack of proximate cause. *Id.* at 12. Although appellants included allegations about USCPR's "financial and other support of the [Boycott National Committee]," they offered only "conclusory assertions that [USCPR] directly financed or supported Hamas" and thereby caused injury to appellants. *Id.* at 13. The district court also dismissed appellants' aiding-and-abetting claims, holding that the Complaint lacked concrete, factual allegations that Hamas or the Boycott National Committee planned or authorized any attacks that injured appellants. *Id.* at 13–15. Finally, the district court dismissed KKL-JNF's common-law claims for lack of supplemental jurisdiction. Appellants filed a motion for reconsideration, which the district court denied. This appeal followed.

**STANDARD OF REVIEW**

We review a district court's dismissal of a complaint for failure to state a claim *de novo*. *Atchley v. AstraZeneca UK Ltd.*, 22 F.4th 204, 214 (D.C. Cir. 2022). In doing so, we assume appellants' factual allegations to be true and draw all reasonable inferences in their favor. *Id.* Appellants' claims must rise "above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim cannot survive a motion to dismiss if based on inferences 'unsupported by facts' or legal conclusions disguised as factual allegations." *Bernhardt v. Islamic Republic of Iran*, 47 F.4th 856, 866 (D.C. Cir. 2022) (quoting *Owens v. BNP Paribas, S.A.*, 897 F.3d 266, 272 (D.C. Cir. 2018)). Rather, "[a] complaint can establish a facially plausible claim only if it sets forth 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Owens*, 897

F.3d at 272 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## ANALYSIS

Appellants brought suit against USCPR under the ATA, a statute that grants United States nationals a private cause of action to recover damages for injuries sustained in terrorist attacks. 18 U.S.C. § 2333(a), (d); *see also Atchley*, 22 F.4th at 214. Direct liability under the ATA attaches when a United States national is "injured in his or her person, property, or business by reason of an act of international terrorism." 18 U.S.C. § 2333(a). Aiding-and-abetting liability applies to anyone "who aids and abets, by knowingly providing substantial assistance, or who conspires with" a designated foreign terrorist organization that commits "an act of international terrorism." *Id.* § 2333(d).

To support a theory of direct liability, appellants contend that USCPR's donation of funds to the Boycott National Committee, which it equates to Hamas, was an "act of international terrorism." *See id.* § 2333(a); Compl. ¶¶ 212–16, 226–32. For indirect liability, appellants assert that USCPR aided and abetted the launching of incendiary devices by Hamas when USCPR provided funds to the Boycott National Committee. *See* Compl. ¶¶ 201–04. Because the Complaint fails to sufficiently connect USCPR to any acts of terrorism, the district court correctly ruled that appellants fail to state a claim.

## I.     Direct Liability

Direct liability under the ATA requires proof that (1) a U.S. national suffered an injury; (2) the defendant committed "an act of international terrorism"; and (3) the injury was

proximately caused by terrorism — *i.e.*, there must be "some causal connection" showing that the injury occurred "by reason of" the act of international terrorism. *Owens*, 897 F.3d at 270; *see* 18 U.S.C. § 2333(a). For an act to qualify as "international terrorism," it must (A) "involve violent acts or acts dangerous to human life" that "are . . . or that would be a criminal violation if committed within the jurisdiction of the United States or of any State"; (B) "appear to be intended" "to intimidate or coerce a civilian population" or to influence or affect a government by intimidation, coercion, or violence; and (C) occur outside the United States' territorial jurisdiction or "transcend national boundaries." 18 U.S.C. § 2331(1)(A)–(C).

Appellants' claim of direct liability relies on the contention that USCPR's donations to the Boycott National Committee are, in fact, donations to Hamas. *See* Oral Arg. Tr. 4:15–5:20. Appellants argue that this case is like *Boim v. Holy Land Foundation for Relief & Development*, in which the Seventh Circuit held that providing direct financial aid to terrorists can be an act of international terrorism within the meaning of the ATA. 549 F.3d 685, 690–91, 694 (7th Cir. 2008) (en banc) (holding that fund transfers to Hamas, which has tried "to kill or wound" others, endangered human life under 18 U.S.C. § 2331(1)(A)). Appellants urge us to "declare [*Boim*] to be the rule in this Circuit." Appellant Br. 9. We have not yet decided whether fiscal sponsorship of a terrorist group can qualify as "an act of international terrorism" for purposes of the ATA, which defines "international terrorism" as limited to "violent acts or acts dangerous to human life." 18 U.S.C. § 2331(1)(A); *see Atchley*, 22 F.4th at 238 (leaving this issue for the district court to address in the first instance on remand). *Boim* declared that "[g]iving money to Hamas, like giving a loaded gun to a child . . . , is an act dangerous to human life." *Boim*, 549 F.3d at 690 (internal quotation marks omitted). But the Second Circuit has reasoned that "providing financial

services to a known terrorist organization may afford material support to the organization even if the services do not involve violence or endanger life," and that such support thus does not necessarily "equate to an act of international terrorism." *See Linde v. Arab Bank, PLC*, 882 F.3d 314, 326 (2d Cir. 2018). We need not take a position on whether mere financial support can be viewed as an act of international terrorism because even if we assume that *Boim*'s theory of liability is available to appellants, they fail to plausibly allege facts that support their claim. At bottom, the instant Complaint does not adequately plead that USCPR provided money to Hamas.

The linchpin of appellants' claim of direct liability is their bold assertion that the Boycott National Committee is a "direct front" for Hamas — *i.e.*, that USCPR's donations to the Boycott National Committee are donations to Hamas. According to the Complaint, the Boycott National Committee is the "broadest coalition in Palestinian civil society that leads the global [boycott, divestment, and sanctions] movement for Palestinian rights;" the Committee connects with "Palestinian civil society activists and pro-Palestinian activists abroad" to promote "boycott as a central form of civil resistance." Compl. ¶¶ 74, 76, 124. To link USCPR to Hamas through the Boycott National Committee, the Complaint asserts that: (1) Hamas is one of the many members that comprise the Boycott National Committee and the PNIF, *id.* ¶¶ 24, 66; (2) the PNIF and the Boycott National Committee are "intertwined and unified," *id.* ¶ 80; (3) the PNIF has a representative on the Boycott National Committee, *id.*; (4) the PNIF and the Boycott National Committee share personnel, *id.*; (5) Hamas agents have served as PNIF representatives, *id.* ¶¶ 81–83; and (6) the PNIF, Hamas, and the Boycott National Committee have been involved in sponsoring and supporting the Great Return March protests, *id.* ¶¶ 87, 88, 112–16. Notably, the Complaint contains no allegations about the nature and extent of USCPR's

donations to the Boycott National Committee, how the Boycott National Committee spends its funds, or how donations to the Boycott National Committee are funneled to the PNIF or Hamas. As a result, appellants' conclusory allegations amount to nothing more than guilt by association: The web of connections alleged in the Complaint falls far short of establishing that the Boycott National Committee is an extension of Hamas or has been taken over by Hamas. Thus, appellants fail to lend factual support to their claim that USCPR provided money to Hamas.

The Complaint also insufficiently alleges that USCPR's actions proximately caused appellants' injuries. To establish proximate cause, appellants must allege that USCPR's actions were a substantial factor in, and had the reasonably foreseeable effect of, causing appellants' harm. *Atchley*, 22 F.4th at 226. But even if we assume that Hamas and the Boycott National Committee are conjoined, appellants do not allege that the money provided to the Boycott National Committee by USCPR funded incendiary attacks. Indeed, the Complaint does not even adequately allege that Hamas launched the incendiary kites and balloons that terrorized appellants. Appellants attribute those attacks to the Sons of al-Zawari, "Palestinian youths," or "H[amas] and/or others." Compl. ¶¶ 9–21, 52, 100. Because the Great Return March protests "are conducted in H[amas] controlled Gaza," appellants claim that any activities at those protests, "including the launching of incendiary terror balloons and kites, cannot occur without the express support, permission, consent[,] and control of H[amas]." Compl. ¶ 107.[2] But we cannot reasonably infer that Hamas controls

---

[2] Appellants allege that the Sons of al-Zawari are "part of H[amas]." Compl. ¶ 103. They base this assertion on the group's name — which pays tribute to Mohammad al-Zawari, an engineer who built and operated drones for Hamas and Hezbollah — and from Facebook posts showing Hamas's al-Qassam Brigade holding a

every act that takes place at the Great Return March protests merely because it administers the Gaza Strip. Even viewing the Complaint in the light most favorable to appellants, it is far from clear who was responsible for the alleged acts of terrorism. *See* Compl. ¶¶ 9–21, 52, 100. The Complaint thus fails to plead that Hamas was responsible for the incendiary attacks and that USCPR's funding of Hamas proximately caused appellants' injuries.

Appellants argue that it is "impossible" for victims of terrorism to plead more specific facts because necessary details — such as the amount of money that USCPR has sent to Hamas — are "hidden" and can be uncovered only during discovery. Reply Br. 2, 6–8. It is true that "[t]errorist attacks . . . often elude the conventional judicial system" because they involve "amorphous" actors who are "difficult to hale into court." *Kemper v. Deutsche Bank AG*, 911 F.3d 383, 386 (7th Cir. 2018); *cf. Kilburn v. Socialist People's Libyan Arab Jamahiriya*, 376 F.3d 1123, 1129 (D.C. Cir. 2004) (observing that material support of state-sponsored terrorist attacks "is difficult to trace"). But a complaint must allege "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's claims. *Twombly*, 550 U.S. at 556. That pleading requirement is not "impossible" to meet in terrorism cases, as evidenced by the complaint we deemed sufficient in *Atchley*. *See* 22 F.4th at 228 (complaint detailed Jaysh al-Mahdi's control over Iraqi Ministry, relying on multiple reports by "people on the ground in Iraq"). Simply put, the factual allegations in the instant Complaint "have not nudged [appellants'] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

---

memorial ceremony for a member of the Sons of al-Zawari. *Id.* ¶¶ 101, 103–05. Those allegations are insufficient to support an inference that Hamas controls the Sons of al-Zawari.

To survive a motion to dismiss, a complaint must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," which requires "more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 678–79. But appellants' factual allegations fail to support their assertion that the Boycott National Committee is a front for Hamas, and that USCPR is directly liable for perpetrating international terrorism by donating money to the Boycott National Committee. To the extent that appellants claim that the Boycott National Committee is independently linked to the incendiary attacks, that claim similarly fails: Appellants insufficiently allege that USCPR's financial aid led to the incendiary attacks, thereby proximately causing appellants' injuries.

## II. Aiding-and-Abetting Liability

As an alternative to their direct-liability claim, appellants contend that USCPR aided and abetted Hamas's launch of incendiary devices by providing funds to Hamas through the Boycott National Committee. Compl. ¶¶ 202–10. The Justice Against Sponsors of Terrorism Act ("JASTA") amended the ATA to expressly permit victims of acts of international terrorism committed, planned, or authorized by a foreign terrorist organization to sue anyone "who aids and abets, by knowingly providing substantial assistance, or who conspires with" the terrorist organization. 18 U.S.C. § 2333(d). JASTA codifies the aiding-and-abetting standard from *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983), which includes three elements: "(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; [and] (3) the defendant must knowingly and substantially assist

the principal violation." *Atchley*, 22 F.4th at 220; *see* JASTA § 2(a)(5), Pub. L. No. 114-222, 130 Stat. 852, 852 (Sept. 28, 2016).

Appellants' attempt to establish aiding-and-abetting liability fails at every turn. First, although appellants claim that USCPR aided and abetted Hamas, appellants do not adequately allege that Hamas "perform[ed] a wrongful act that cause[d] an injury." *See Atchley*, 22 F.4th at 220. As discussed, appellants assign responsibility for the incendiary attacks to the Sons of al-Zawari, "Palestinian youths," or "H[amas] and/or others." Compl. ¶¶ 9–21, 52, 100. Appellants' uncertainty about who perpetrated the incendiary attacks is fatal to their ability to plead that USCPR aided and abetted those attacks.

Second, there are no facts from which we can infer that USCPR was "generally aware" that its role of providing funds to the Boycott National Committee was "part of an overall illegal or tortious activity." *See Atchley*, 22 F.4th at 220. The Boycott National Committee was formed to coordinate boycott, divestment, and sanctions activity as a form of civil resistance. Compl. ¶¶ 71–76. Appellants' assertion that such activities are "another form of terror in [the] quest to remove Israel as a sovereign state," Compl. ¶ 78, is insufficient to support USCPR's liability: Advocating and coordinating a boycott of Israel — "economically, academically[,] and diplomatically," Compl. ¶ 70 — is not unlawful. Although appellants allege that the Boycott National Committee "knows that the incendiary terror balloons and kites are launched during [the Great Return March protests]," and nevertheless "promot[es] and support[s] the [Great Return March]," Compl. ¶ 119, that alone is not enough to support a finding that USCPR was aware that its donations to the Boycott National Committee were used unlawfully, given that the Boycott National Committee also engages in lawful civil resistance. At

most, the Complaint alleges that an Executive Director at USCPR tweeted that an "infinitesimal percentage" of the population in Gaza flew incendiary kites and balloons. Compl. ¶ 134. But a single executive's awareness of a rare event is insufficient to impute to the organization a general awareness of the predictable occurrence of such an event. *See Bernhardt*, 47 F.4th at 869. And because the tweet made no reference to Hamas or the Boycott National Committee, it does not support an inference that USCPR knew that it might play a role in illegal activity by providing funds to the Boycott National Committee. Appellants thus fail to allege specific facts that demonstrate USCPR's general awareness of its own role in illegal activity.

Finally, we discern no non-conclusory factual allegations that USCPR "knowingly and substantially assist[ed]" any incendiary launches. *See Atchley*, 22 F.4th at 220. Appellants fail to allege that the funds that USCPR provided to the Boycott National Committee were used to finance any terrorist attacks, much less that USCPR was aware that it was happening. And as we have discussed, the Complaint does not even allege that the Boycott National Committee provided funds to Hamas.[3]

---

[3] We generally apply six factors enumerated in *Halberstam* to evaluate knowing and substantial assistance: "(i) the nature of the act assisted, (ii) the amount and kind of assistance, (iii) the defendants' presence at the time of the tort, (iv) the defendants' relationship to the tortious actor, (v) the defendants' state of mind, and (vi) the duration of assistance." *Atchley*, 22 F.4th at 221 (citing *Halberstam*, 705 F.2d at 483–84). We find it unnecessary to discuss those factors here because appellants' factual allegations are so clearly deficient. Although the Supreme Court is considering the scope of the substantial-assistance standard in a pending case, *see Twitter, Inc. v. Taamneh*, No. 21-1496 (U.S. argued Feb. 22, 2023), our ruling here does not depend on that case's outcome because, as discussed,

We note that appellants' allegations are far less convincing than those we have evaluated in prior cases. In *Atchley*, we held that the plaintiffs sufficiently pleaded aiding-and-abetting liability where the defendant companies provided free goods and cash bribes worth millions of dollars per year to secure business opportunities with the Iraqi Ministry of Health. *Atchley*, 22 F.4th at 210, 221, 225. Defendants did so with knowledge that the Ministry during that period "was engaged in anti-American acts of terrorism" that killed or maimed the plaintiffs or their family members — acts allegedly planned and authorized by Hezbollah, a designated foreign terrorist organization. *Id.* at 209–10, 221. The plaintiffs alleged that the Ministry was "openly controlled" by "[t]he known terrorist group Jaysh al-Mahdi," such that its headquarters bore "Death to America" slogans on the walls and Jaysh al-Mahdi fighters "freely roamed" the hallways. *Id.* at 209, 212, 221. They alleged that the defendants' agents visited the Ministry when it was manifestly under Jaysh al-Mahdi's control, and that defendants' corporate leadership in the United States also "would have become aware of frequent mainstream media reports describing Sadr's control of the Ministry and use of that position for support of terrorist attacks against Americans." *Id.* at 213; *see id.* at 221. Their allegations sufficed to plead the companies' general awareness of overall illegal activity by a Ministry under the direct control of Jaysh al-Mahdi, and the companies' knowing provision of substantial assistance to Jaysh al-Mahdi's acts of international terrorism. *See id.* at 221, 224. By contrast, the instant Complaint fails to allege USCPR's general awareness that its support of the Boycott National Committee played any role in launches of incendiary kites and balloons in Gaza near the Israeli border.

---

appellants fail to sufficiently plead any of the three required elements of an aiding-and-abetting claim.

In *Bernhardt*, we held that an American bank that merely transacted business with Al Rajhi Bank — a bank affiliated with al-Qaeda — could not be liable for aiding and abetting al-Qaeda. *Bernhardt*, 47 F.4th at 868–69. We found it significant that Al Rajhi Bank had "extensive legitimate operations," and no allegations established that it and al-Qaeda were "closely intertwined." *Id.* at 869. Like Al Rajhi Bank, the Boycott National Committee has extensive legitimate operations, and the allegations in the Complaint do not establish that it is closely intertwined with a terrorist group. The Boycott National Committee engages in lawful advocacy to promote the boycott, divestment, and sanctions movement against Israel. At most, the Boycott National Committee includes Hamas and PNIF among its many members; and it allegedly is aware that Hamas and other affiliates engage in terrorist activities. *See* Compl. ¶¶ 74, 76, 124. Those allegations are much weaker than those in *Bernhardt*: While Al Rajhi Bank provided banking services to al-Qaeda, the Complaint does not allege that the Boycott National Committee provided any funds to Hamas. Accordingly, our precedents clearly support the dismissal of appellants' Complaint.

## CONCLUSION

For the foregoing reasons, we conclude that the district court properly dismissed appellants' direct-liability and aiding-and-abetting claims under the ATA. The Complaint does not adequately plead that USCPR provided funds to Hamas or otherwise aided or abetted Hamas. We therefore affirm the judgment of the district court.

*So ordered.*